# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **WINSTON FLOYD WAITES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v.                                } | Case No.: 1:11-CV-04164-RDP |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION, COMMISSIONER** } | |
| **MICHAEL J. ASTRUE,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Winston Waites ("Plaintiff") brings this action pursuant to Section 405(g) and Section 1383(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under the Act. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the Commissioner's decision is due to be affirmed.

**I.   Proceedings Below**

Plaintiff filed his application for a period of disability and DIB on April 2, 2009. [R. 11, 54]. Plaintiff's application was denied on May 12, 2009. [R. 60]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 26, 2010. [R. 25, 61-62]. In his November 19, 2010 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because he failed to meet the disability requirements of the Act and retained the

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.

residual functional capacity to perform work with minimal restrictions. [R. 14, 20]. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1-6]. See 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 49 years old and had the equivalent of a high school education through a GED. [R. 29]. Plaintiff had previously worked as a tire changer and recycler. [R. 19]. Plaintiff alleges he suffers from chronic pain in his shoulder and diabetes. [R. 31-32]. According to Plaintiff, he has been unable to work since 2001 due to these impairments. [R. 30]. Plaintiff testified that he lives alone, is able to drive, lifts very little weight, does very little grocery shopping, mows his lawn for about fifteen (15) minutes at a time, and walks two or three blocks for exercise. [R. 29-31]. At the time of the hearing, Plaintiff was six feet, two inches tall and weighed 243 pounds. [R. 29]. Plaintiff stated that he sits and watches TV at his house or goes to his mother's and watches TV there. [R. 31]. Plaintiff spends "about half the day" sitting down or resting. [R. 43]. Plaintiff alleges that he cannot sleep well at night because he gets "sore and stiff." [R. 44].

Plaintiff testified that he has had diabetes for about ten (10) years and that he can normally eat what he wants. [R. 31]. Plaintiff has had no diabetic emergencies requiring hospitalization. [R. 31]. Plaintiff also alleged that his diabetes is "not really" under control and testified that he does not check his blood sugar daily. [R. 37]. Plaintiff stated that his diabetes medication makes him feel nauseated and "a little bit disoriented." [R. 38]. It takes Plaintiff "a couple of hours" to feel normal after taking that medicine. [R. 38]. Plaintiff claimed that he has headaches seven or eight times during the week caused by fluctuations in his blood sugar. [R. 44].

Plaintiff complained this his chronic shoulder pain keeps him "from getting up and down, running around, picking up, and lifting stuff over [his] head." [R. 32]. Plaintiff stated that he also has pain in his lower back and legs that make him "sore and stiff all over" and prevents him from walking. [R. 41]. Plaintiff also testified that "the bottom of [his] feet feel like they're on fire all the time" and that they "hurt all the time." [R. 32]. Since 2000, Plaintiff has taken Lyrica, Lorcet, and Darvocet for his pain. [R. 32]. Plaintiff testified that these pain medications make him feel dizzy. [R. 39]. Plaintiff also takes over-the-counter aspirin for his heart. [R. 33].

Plaintiff does not have medical insurance. [R. 37]. He saw a doctor only once in the year preceding his disability hearing. [R. 37]. When asked about his attitude toward going to the doctor, Plaintiff testified that "[he] would like to go more" but "cannot afford it." [R. 37]. The ALJ encouraged Plaintiff to file updated medical records from Quality of Life Health Services. [R. 48].

In response to a hypothetical question presented by the ALJ, a vocational expert ("VE") testified that Plaintiff could not perform any of his past work but that he could perform jobs such as inspector, hand packager, cafeteria attendant, and cashier. [R. 49-50]. In response to questions from Plaintiff's attorney, the VE testified that if Plaintiff's testimony was credible he could not return to any of his past work or any work that she recommended. [R. 51]. The VE also stated that if Plaintiff was required to rest because of pain, that would inhibit his ability to work. [R. 51]. The VE further testified that if Plaintiff had difficulties with his pain medications or other medication reactions this would have an effect on Plaintiff's ability to work. [R. 51].

In support of his claim, Plaintiff presented medical records beginning with a November 29, 2006 entry from Stringfellow Memorial Hospital. [R. 172-206]. Plaintiff was diagnosed with a suspected renal stone and discharged the same day with prescriptions for pain medication. [R. 195-

3

201].  Plaintiff returned to the hospital the next day and was diagnosed with a recurrent kidney stone. [R. 186].  Plaintiff's next record is from a visit to Northeast Alabama Regional Medical Center on December 26, 2006. [R. 211-212].  Plaintiff complained of hiccups and treatment notes reflect a diagnosis of reflux. [R. 212].   On October 15, 2007, Plaintiff visited Stringfellow Memorial Hospital and was seen for a mild nose injury. [R. 173-177].  Plaintiff complained that he felt a splinter in his nose. [R. 179].  He was prescribed an antibiotic and pain medication. [R. 178].

Plaintiff also submitted medical records from at least twelve (12) visits to Anniston Quality Healthcare. [R. 233-261, 270-300].  Plaintiff's chief complaints during his April 9, 2007 visit were related general pain and his diabetes. [R. 241, 243].  During this visit, a nurse practitioner provided Plaintiff with information regarding his diet. [R. 244].  Treatment notes also indicate that Plaintiff has a "moderate activity level" and that his "exercise includes walking." [R. 241].  On August 3, 2007, Plaintiff returned for a follow-up visit and had his medications refilled.  [R. 240].  Treatment notes also reflect that Plaintiff "wanted something else for pain." [R. 240].

On July 31, 2008, Plaintiff returned to Quality Healthcare for his diabetes and pain. [R. 236].  His blood sugar was high during this visit. [R. 236].  Plaintiff was in "no apparent distress" and he was "alert and oriented." [R. 234].  Treatment notes reflect he received information regarding diabetes education. [R. 235].  Plaintiff was seen at Quality Healthcare again on August 19, 2008 for a follow-up appointment. [R. 232].  He had no new complaints and told doctors he was "walking daily" and "taking med[icines] as given." [R. 232].  He showed "no unusual anxiety or evidence of depression."  [R. 233].

When seen at Quality Healthcare on February 2, 2009, Plaintiff complained of pain in his left shoulder for the past three months. [R. 230].  Treatment notes indicate his left shoulder was

"markedly tender with diminished range of motion in certain places." R. 231]. Plaintiff returned to Quality Healthcare on April 15, 2009. [R. 227]. Treatment notes indicate that Plaintiff "walk[ed] miles daily." [R. 227]. The physician also noted that Plaintiff "possesses knowledge of diabetes and its management" and that Plaintiff "has the ability and willingness to enact [a] treatment plan." [R. 228]. Treatment notes further state that Plaintiff "has the self-managing skills to manage diabetes care." [R. 228].

When Plaintiff returned to Quality Healthcare on July 15, 2009 he had no new problems except a possible spur on his left heel. [R. 272]. Otherwise, Plaintiff was "feeling well" and "trying to eat right and be more active." [R. 272]. Plaintiff was diagnosed with a left heel bone spur. [R. 284]. On October 14, 2009, Plaintiff was "doing well" and had "no acute issues." [R. 275]. Treatment notes indicate he was in "no apparent distress" and that he was "well nourished and well developed." [R. 275]. The examining physician did note that Plaintiff was currently fasting. [R. 276]. When Plaintiff returned on Quality Healthcare on December 16, 2009, he was showing "slow improvement" in controlling his diabetes and had "no new health concerns except foot pain and burning on right." [R. 278]. Treatment notes indicate that Plaintiff thought these symptoms were associated with his heel spur. [R. 278]. No physical exam was completed during this visit and treatment notes again reflect that Plaintiff had the knowledge and ability to enact a diabetes treatment plan. [R. 279].

Ten months later, on October 4, 2010, Plaintiff returned to Quality Healthcare. [R. 287]. Plaintiff was seen for his diabetes and for back pain. [R. 287]. He also told doctors he felt "nervous and jittery." [R. 287]. Treatment notes indicate Plaintiff had "not checked [his] glucose in a very long time." [R. 287]. Plaintiff was instructed to "eat with discretion and exercise as recommended."

[R. 288]. When Plaintiff returned to Quality Healthcare on December 7, 2010, Plaintiff had some "tingling in [his] right hand." [R. 290]. Treatment notes reflect that Plaintiff was "well nourished, well developed, and hydrated." [R. 291]. Plaintiff was again instructed and educated on his "diet and exercise." [R. 291]. Plaintiff saw a doctor at Quality Healthcare on April 7, 2011 for his diabetes and a kidney stone follow-up. [R. 294]. Treatment notes reflect no major changes and indicate that Plaintiff had "no motor or sensory deficits" and that he was once again educated regarding proper diet and exercise. [R. 295].

On May 12, 2009, Priscilla Davis, a non-examining consultant conducted a Physical Residual Functional Capacity Assessment ("RFC") of Plaintiff. [R. 262-69]. Regarding exertional limitations, Davis concluded that Plaintiff could occasionally lift and/or carry twenty (20) pounds, frequently lift and/or carry ten (10) pounds, stand and/or walk with normal breaks for about six (6) hours in an 8-hour work day, sit with normal breaks for about six (6) hours in an 8-hour work day, and that Plaintiff required no limitations on pushing and/or pulling. [R. 263]. Regarding postural limitations, Davis concluded that Plaintiff could perform acts requiring frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, but no activities requiring ladders, ropes, or scaffolds. [R. 264]. Further, Davis concluded that Plaintiff established no manipulative, visual, or communicative limitations, and that Plaintiff's only environmental limitations were to avoid concentrated exposure to extreme cold and extreme heat and to avoid all exposure to hazards including dangerous machinery and unprotected heights. [R. 265-66]. Davis's RFC states that she consulted with an administrative medical consultant, Dr. Shugerman, who recommended "Light RFC." [R. 263]. Davis also indicated that she found Plaintiff's subjective statements about his condition partially credible. [R. 267].

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2001 through his date last insured of June 30, 2009. [R. 13]. Based upon the medical evidence presented, the ALJ concluded that Plaintiff has moderate obesity and Type II diabetes mellitus, both of which are "severe" impairments as defined by the Act. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in the regulations. [R. 13].

After consideration of the entire record, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to sit six (6) hours, without interruption two (2) hours; stand/walk six (6) hours, without interruption two (2) hours; lift, carry, push and pull frequently up to fifteen (15) pounds and occasionally up to forty (40) pounds; use his hand for simple grasping and fine manipulation; use his feet for repetitive movements such as operating foot controls or pushing and

pulling; occasionally bend, stoop, crawl, climb, crouch, kneel, and balance; occasionally climb ladders, ropes, and scaffolds; occasionally use his upper extremities for reaching above shoulder level; cannot perform activities involving unprotected heights, being around moving hazardous machinery, or driving commercial motorized vehicles; should avoid concentrated or excessive exposure to dust, odors, fumes, extremes in temperature and humidity; experiences mild to moderate pain, which occasionally interferes with his ability to maintain concentration, persistence, and pace. [R. 14].

The ALJ concluded that Plaintiff does not have the RFC to perform his past relevant work. [R. 19]. The ALJ nevertheless found that there are a significant number of jobs in the national economy which Plaintiff could perform, including inspector/hand packager, cafeteria attendant, and cashier, all of which allow Plaintiff to work within the above-mentioned limitations. [R. 20]. Thus, the ALJ ruled that Plaintiff is not "disabled" as that term is defined in the Act, and therefore, is not entitled to a period of disability or DIB. [R. 20].

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. [Pl.'s Mem. 14]. Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because: (1) the ALJ did not properly evaluate and discuss Plaintiff's obesity, diabetes, and fatigue, and (2) the ALJ failed to call an appropriate medical expert to testify about the effects of Plaintiff's diabetes on his alleged fatigue. [Pl.'s Mem. 12-13].

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

**V.      Discussion**

    **A.      The ALJ Properly Evaluated Plaintiff's Obesity, Diabetes, and Fatigue**

Plaintiff maintains that the ALJ did not properly discuss Plaintiff's evidence of obesity, diabetes, and fatigue. [Pl.'s Mem. 11-13]. In support of this argument, Plaintiff cites *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) and *Luckey v. Astrue*, 331 Fed. Appx. 634, 638-40 (11th

Cir. 2009) for the proposition that the ALJ must state specifically the weight accorded each item of impairment evidence and the reasons for his decision on that evidence. Although this is a correct statement of the law, Plaintiff's reliance upon it here is misplaced.

The ALJ stated that "the record does not contain any opinions from treating or examining physicians indicating that the [Plaintiff] is disabled. . . ." [R. 18]. Additionally, the ALJ specifically noted that he did not analyze Davis's Physical RFC offered by the Disability Determination Service ("DDS") because it was prepared by a single decision maker versus an acceptable medical source. [R. 18]. Because no medical evidence on record suggested Plaintiff's obesity, diabetes, and fatigue caused disabling symptoms, the ALJ could not evaluate such evidence. As such, there was no "weight" to assign this nonexistent evidence. Moreover, without explicitly saying so, it is clear that the ALJ assigned little or no weight to the DDS RFC assessment because he stated that he did not even consider it in making his disability determination. [R. 18]. Regarding the RFC assessment, it is likewise clear that the ALJ assigned little or no weight to this evidence as he did not consider it in making his decision because it was provided by a single decision maker. [R. 18]. Therefore, no weight could be assigned to this absent impairment evidence. Accordingly, the ALJ properly considered the impairment evidence in the record and noted the weight accorded such evidence and the reasons therefore.[2]  *See e.g.*, *Gibson*, 779 F.2d at 623.

Although not clearly stated in his brief, Plaintiff also appears to argue that the ALJ did not properly consider his obesity, diabetes, and fatigue in combination. To the extent Plaintiff has advanced this argument, the court finds it lacks merit. Plaintiff notes that SSR 02-1p stated that in

---

[2] Regarding the evidence which Plaintiff appears to point to in support of his claim of disability based upon his obesity, diabetes, and fatigue, the ALJ noted that no evidence in the record established any impairments in this regard.

11

cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity, especially in cases involving sleep apnea. SSR 02-1p at 57863. The ALJ quoted this language and then stated that "the composite available medical evidence of record does not reveal that this impairment has otherwise reduced the functional limitations and restrictions" set forth in his RFC finding. [R. 16]. The ALJ also noted that medical records reflected Plaintiff's ability to diet and lose weight. [R. 16]. Specifically, the ALJ stated that on July 15, 2009, Plaintiff weighed 185 pounds during a follow up visit at Quality Healthcare. [R. 16]. Moreover, no evidence in the record indicates that Plaintiff suffers from sleep apnea. Additionally, regarding any possible fatigue, the ALJ stated that Plaintiff's medical records indicate his exercise routine included walking daily. [R. 17].

Plaintiff also asserts that the ALJ did not properly discuss his diabetes. [Pl's Mem. 13]. Plaintiff did testify that his diabetes is not always under control. [R. 37]. However, the record also reflects (and the ALJ noted) that on multiple visits, Dr. Goodman at Quality Healthcare noted that Plaintiff: (1) "possessed the knowledge of diabetes and its management;" (2) "had the ability and willingness to enact a treatment plan;" and (3) "had the self-managing skills to manage diabetes care." [R. 17]. Furthermore, the ALJ noted that no medical evidence in the record suggests Plaintiff's diabetes has caused disabling limitations restricting Plaintiff's ability to perform some work. [R. 18]. Based upon these findings outlined in the ALJ's decision, the court finds that the ALJ explicitly discussed and analyzed Plaintiff's diabetes and obesity, and any potential limitations caused by their symptoms. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1996) ("The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability

to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Thus, the Commissioner's decision is not due to be reversed on this ground.

### B. The ALJ Did Not Err in Failing to Call an Appropriate Medical Expert to Testify About the Effects of Plaintiff's Diabetes

Plaintiff has submitted a brief and cursory argument that the ALJ, despite having an obligation to develop a complete record, failed to do so. [Pl.'s Mem. 13]. In support of this contention, Plaintiff claims that the regulations require that "[w]e must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled." 20 C.F.R. § 416.929(c)(2). Plaintiff maintains that this regulation required that, due to the few medical records obtained[3] and the Plaintiff's inability to pay for treatment, the ALJ call an appropriate medical expert to testify about the effects of Plaintiff's diabetes on his alleged fatigue. [Pl.'s Mem. 13]. However, as the Commissioner notes, nothing in this section discusses medical experts or provides a basis for requiring the ALJ to obtain evidence from a medical expert. And, importantly, as with any claimant, it is Plaintiff who "bears the ultimate burden of proving he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about [claimant's] medical impairment[s]"); 20 C.F.R. § 416.912(c) (stating that

---

[3]Although medical records prior to 2006 are scant, Plaintiff submitted treatment notes from twelve different visits to Quality Healthcare between April 9, 2007 and April 7, 2011. [See R. 223-261, 270-284, 285-300]. Plaintiff's testimony at the hearing does not indicate why no medical records exist between 2001, when he alleges his disability began, through 2005. Although Plaintiff expressed that he would like to go to the doctor more if he could afford it, Plaintiff sought treatment on a variety of occasions from 2007 through 2011 at Quality Healthcare, which is an indigent care clinic that has existed since 1977. *See* Quality of Life Health Services, Inc., "About Quality of Life," http://www.qolhs.org/AboutUs/about_us1.html.

it is claimant's responsibility to "provide medical evidence showing that [claimant has] an impairment(s) and how severe it is during the time you say you are disabled").

Not a single treatment note outlining Plaintiff's multiple visits to Quality Healthcare between April 9, 2007 and April 11, 2011 suggests that Plaintiff complained of fatigue. [See R. 223-261, 270-284, 285-300]. Moreover, as noted above, the ALJ stated that Plaintiff's medical records reflected he was "trying to be more active" and that Plaintiff "walked daily." [R. 17]. Additionally, although Plaintiff testified that his diabetes and its corresponding medication sometimes cause him to become dizzy, disoriented, and nauseated, Plaintiff did not allege any symptoms suggesting his diabetes caused any fatigue that would impact his ability to work. [R. 38-39]. Thus, because (1) it is Plaintiff's duty to prove he is disabled and (2) the ALJ's decision regarding the impact of any fatigue caused by Plaintiff's diabetes is otherwise supported by substantial evidence, the court concludes that the Commissioner's decision is not due to be reversed by the ALJ's failure to call a medical expert. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11 th Cir. 1999).

### VI.   Conclusion

The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Therefore, the Commissioner's decision is due to be affirmed, and a separate order consistent with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      4th      day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE